IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA DEEMER,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,[1]<br><br>    Defendant. | Civil Action No. 21-335 |

<u>ORDER</u>

AND NOW, this 26th day of July 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 19) filed in the above-captioned matter on October 28, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on August 30, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED insofar as she seeks remand to the Commissioner of Social Security ("Commissioner") for further administrative proceedings. Accordingly, this matter is hereby remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    Background**

Plaintiff applied for disability insurance benefits ("DIB") on January 10, 2019. (R. 15). She later pursued her application before an Administrative Law Judge ("ALJ"). (*Id.*). The ALJ decided that Plaintiff was not disabled (R. 28), and Plaintiff challenged that decision before the Appeals Council. (R. 1). The Appeals Council "found no reason . . . to review the [ALJ's]

---

[1] Acting Commissioner of Social Security Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d), a change that has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket appropriately.

1

decision," (*id.*) making the ALJ's decision the Commissioner's final decision. 20 C.F.R. § 404.981. Plaintiff has sought the Court's review of the decision.

##   II.   Standard of Review

ALJs use a five-step evaluation to decide whether a claimant is disabled under the Social Security Act ("Act"). *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 776 (W.D. Pa. 2013). In those five steps, the ALJ

> [M]ust determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App'x. 1; (4) whether the claimant's impairments prevent her from performing past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)). District courts review the ALJ's decision for "substantial evidence," that is, to ensure that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high," *id.*, and reviewing courts are not "empowered to weigh the evidence or substitute [their] conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). However, the standard is not so deferential as to be perfunctory. An ALJ must show how he "analyzed all [the] evidence" and must explain his consideration of "obviously probative exhibits" for a reviewing court to find the decision is supported by substantial evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (explaining that ALJs must identify evidence that supports their decisions and address evidence they rejected in arriving at their decisions).

**III.    The ALJ's Decision**

In this matter, the ALJ found at step one that Plaintiff had not done any substantial gainful activity since her alleged disability onset date. (R. 17). At step two he identified nine severe, medically determinable impairments including anxiety, depression, PTSD, and right knee osteoarthritis status post replacement surgery. (*Id.*). At step three, the ALJ found Plaintiff did not meet or equal criteria for one of the presumptively disabling impairments listed in the regulations. (R. 18—20). At step four, the ALJ considered Plaintiff's alleged symptoms and limitations, medical records, and the medical opinion/prior administrative medical finding evidence and formulated a medium-work RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c) except she can only occasionally climb ramps and stairs, balance, and stoop but never climb ladders, ropes, and scaffolds, kneel, crouch, and crawl. Additionally, she must avoid concentrated exposure to extremes of heat and cold, vibration, environmental irritants such as fumes, odors, dust, gases, and areas with poor ventilation, and hazards such as inherently dangerous moving machinery and unprotected heights. The claimant is also limited to performing routine repetitive tasks, at a Specific Vocational Preparation ("SVP") level of one or two. She can only work in a static low stress environment that involves only simple decisions, simple one and two step instructions, and infrequent change; changes that did occur would be explained, written, and or demonstrated and could be learned in thirty days or less. Her work must not be fast paced or have strict production or time quotas. The claimant can have occasional interaction with others.

(R. 21).

Explaining how the evidence influenced his formulation of the RFC, the ALJ explained that he found most of the medical opinions in evidence to be unpersuasive. (R. 24—26). For example, the ALJ considered the opinion authored by Patti Laskey, CRNP, who opined Plaintiff could not meet competitive work standards due to mental impairments. (R. 26). The ALJ found

Ms. Laskey was "not an acceptable medical source," and determined her opinions were not persuasive because her "own treatment notes" showed that "[Plaintiff was] generally doing okay with medication." (*Id.*). Further, though Ms. Laskey commented on paranoia and panic attacks, these symptoms were "not documented on a regular basis in the evidence of record." (R. 26).

Having articulated Plaintiff's RFC, the ALJ found Plaintiff could not return to her past work as a shipping supervisor. (*Id.*). However, the ALJ found at the final step of the five-step evaluation that Plaintiff's age, education, work experience, and RFC would permit adjustment to at least two occupations: produce packer and hand packager. (R. 27). These medium exertion, unskilled occupations offered a combined 100,000 jobs in the national economy. (*Id.*). Accordingly, Plaintiff was determined to be not disabled. (R. 28).

## IV. Legal Analysis

Plaintiff has challenged the ALJ's decision on three grounds: she argues the ALJ erred in his assessment of the medical opinion and prior administrative medical evidence; that he relied on his own lay interpretation of the evidence; and, more broadly, that the ALJ's RFC finding is unsupported by substantial evidence. Although the ALJ's decision reflects what in many respects appears to be thorough consideration of the evidence, the Court will order remand because it appears the ALJ failed to apply the correct standards in evaluating some of the medical opinion evidence.[2]

---

[2] Plaintiff's argument that the ALJ erroneously relied on his own lay opinion is without merit. Her argument is based on the ALJ's consideration of Plaintiff's daily activities, *e.g.*, playing games on her phone. (R. 22, 26). Daily activities are relevant to an ALJ's consideration of the "intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *7 (S.S.A. Oct. 25, 2017). Therefore, the ALJ did not err in considering Plaintiff's ability to play games on her phone in his formulation of the RFC.

Plaintiff's third argument—that the RFC is unsupported by substantial evidence—does not appear to be a substantively independent argument, but a continuation of her other

As the Court recounted above, Plaintiff's application was filed in January 2019. For claims like hers, filed on or after March 27, 2017, the regulations governing whose opinions will be considered, what constitutes a medical opinion, and how ALJs evaluate opinions are recently amended. 20 C.F.R. § 404.1520c. The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the demands of work activities. *Id.* at § 404.1513(a)(2). "A 'medical source' is, *inter alios*, 'an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law[.]'" *Darrylena G. v. Kijakazi*, No. 1:20-CV-19984, 2022 WL 1442149, at *11 (D.N.J. May 6, 2022) (citing 20 C.F.R. § 404.1502(d) (2017)). When an ALJ considers medical opinion evidence, he must evaluate the persuasiveness of the opinion without affording it "any specific evidentiary weight." 20 C.F.R. §§ 404.1520c(a)—(b). Five factors are relevant to persuasiveness: supportability, consistency, relationship of the medical source to the claimant (*e.g.*, how long the medical source has treated the claimant), specialization, and other factors (*e.g.*, "an understanding of our disability program's policies and evidentiary requirements"). *Id.* § 404.1520c(c). The ALJ must address supportability and consistency in the decision but is not required to explain his consideration of the other factors. *Id.* § 404.1520c(b)(2).

There are two errors in the ALJ's discussion of the opinion evidence that indicate to the Court that the ALJ did not conform his analysis to the new regulations. First, the ALJ appears to

---

arguments. She has insisted that, had the ALJ properly evaluated the evidence, he would have formulated an RFC so limiting that it would have precluded all work. Upon remand, the Commissioner will have the opportunity to determine whether the evidence supports a more limiting RFC. The Court need not speculate as to what limitations are justified by the evidence.

have relied on the old regulations to determine which medical opinion authors were acceptable medical sources. Second, the ALJ did not adequately explain his consideration of supportability and consistency for all the medical opinions he considered. Addressing the first error first, the ALJ found the opinions of Dana Veatch, FNP-C, and Patti Laskey, CRNP, both to be not persuasive and—explaining his reasoning—noted that neither author was an "acceptable medical source under the Social Security Act." (R. 24, 26). Under the old rules, nurse practitioners were not acceptable medical sources. *Lopez v. Berryhill*, No. CV 15-4175, 2019 WL 1930164, at *5 (D.N.J. May 1, 2019). Acceptable medical sources under the old regulations included "licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists." *St. John v. Acting Comm'r of Soc. Sec.*, No. 15-8831, 2017 WL 712757, at *4 (D.N.J. Feb. 23, 2017) (citing 20 C.F.R. § 416.913(a) (2011)). Under the amended regulations, acceptable medical sources "include licensed advanced practice registered nurses . . . within their licensed scope of practice." *Remaley v. Saul*, No. CV 2:19-1493, 2021 WL 1224519, at *2 (W.D. Pa. Mar. 31, 2021) (citing 20 C.F.R. § 404.1502(a)(7)). As there is no indication that Ms. Veatch or Ms. Laskey were outside their scopes of practice when they offered their opinions as to Plaintiff's impairments and limitations, the ALJ erred in finding that their opinions were not offered by acceptable medical sources.

Not only that but, regarding the second error, the Court finds the ALJ inadequately expressed his consideration of consistency or supportability for these and other medical opinions in the record. Considering Ms. Veatch's opinion,³ the ALJ explained that he found it to be

---

³       Ms. Veatch performed an internal medicine examination on May 2, 2019. (R. 652). At that time, she had not received any records from the Bureau of Disability Determination nor from Plaintiff. (R. 654). She observed that Plaintiff "appeared to be in no acute distress." (R. 655). She found Plaintiff's joints were "stable and nontender" and her strength to be "5/5 in the upper and lower extremities." (*Id.*). Plaintiff's hand/finger dexterity was intact. (R. 656). Ms. Veatch

unpersuasive not only because she was not an acceptable source, but also because she was not given any of Plaintiff's records to review and gave "no explanation . . . for the limitations" other than asthma for environmental limitations. (R. 24). The ALJ also noted that Ms. Veatch did not mention Plaintiff's knee pain. (*Id.*). In this explanation, the Court discerns the ALJ's consideration of supportability but not consistency. Though not specifically mentioned, supportability was adequately addressed when the ALJ remarked that Ms. Veatch did not give explanations for the limitations she opined. *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (explaining that ALJs are not required to use specific language in their decisions). But while the Court might find an acknowledgement of consistency (or lack thereof) in the ALJ's mention of knee pain and its absence from Ms. Veatch's opinion, it could not avoid speculation in doing so. A more explicit assessment of consistency is required pursuant to Section 404.1520c(b)(2).

This error appears to have been inverted in the ALJ's consideration of Ms. Laskey's opinion[4] insofar as the ALJ addressed consistency but not supportability. For consistency, the

---

noted diagnoses of Major Depressive Disorder, Obsessive Compulsive Disorder, Generalized Anxiety Disorder, and Somatization Disorder. (*Id.*). Based on her examination, Ms. Veatch completed a statement of ability to do work-related activities. (R. 657). She did not opine many limitations therein, but she limited Plaintiff's sitting/standing/walking to four hours at a time. (R. 658). She limited Plaintiff's operation of foot controls to "Frequently," *i.e.*, one-third to two-thirds of the time. (R. 659). She found several environmental limitations would be appropriate to accommodate Plaintiff's asthma, such as only occasional exposure to humidity, dust, extreme cold, extreme heat, or vibrations. (R. 661).

[4]    Ms. Laskey evaluated Plaintiff on November 26, 2019 and offered her opinion as to Plaintiff's impairments and associated limitations. (R. 760—63). For Plaintiff's impairments, Ms. Laskey listed PTSD, unspecified bipolar and related disorder, unspecified personality disorder, OCD, diabetes (type II), asthma, GERD, allergies, chronic diarrhea, and a history of DVT (deep vein thrombosis). (R. 760). She identified numerous associated symptoms such as "Illogical thinking" and "Easy distractibility." (*Id.*). For limitations, Ms. Laskey indicated that Plaintiff would be "Unable to meet competitive standards" for many basic work skills. (R. 761). For instance, Ms. Laskey opined that Plaintiff would be unable to meet competitive standards even for carrying out "very short and simple instructions." (*Id.*). Ms. Laskey also opined Plaintiff's impairments would cause her to be absent from work more than four days monthly.

ALJ found Ms. Laskey's opinions were undermined by her own notes which indicated Plaintiff was doing "okay with medication." (*Id.*). Further addressing consistency, the ALJ explained that the paranoia and panic attacks Ms. Laskey addressed were not regularly documented elsewhere in the record. (*Id.*). Other than the ALJ's dismissal of paranoia and panic attacks as a basis for the opined limitations, the Court detects no clear acknowledgment of supportability, *i.e.*, the explanations Ms. Laskey cited for her opined limitations. 20 C.F.R. § 404.1520c(c)(1). Thus, the ALJ's evaluation of Ms. Laskey's opinion was inadequate under the new regulations.

The ALJ erred similarly in his consideration of the medical opinions authored by Dr. Brian Garcher (DPT) and Dr. Suzanne Putnam (hereinafter the "Garcher-Putnam" opinion),[5] as well as Dr. Michael Rosenberg.[6] For the Garcher-Putnam opinion, the ALJ adequately

---

(R. 762). On the form used by Ms. Laskey, there are no explanations that immediately accompany the opined limitations. However, at the end of the form where she was asked to "describe any additional reasons not covered above why [Plaintiff] would have difficulty working at a regular job," Ms. Laskey explained: "She obsesses about events . . . and cannot stop being depressed over them." (*Id.*). She also described Plaintiff as crying "on a fairly consistent basis." (*Id.*). Ms. Laskey also indicated that Plaintiff had panic attacks, was paranoid, and had persistent thoughts of death. (*Id.*).

[5]   Dr. Garcher did a physical capacity assessment for Plaintiff wherein he noted diagnoses of unspecified shoulder pain and osteoarthritis of the right knee. (R. 764). Dr. Garcher evaluated Plaintiff's gait and found she was able to ambulate for just under six minutes before needing to stop. (R. 768). Tremors of the right upper extremity were also observed, which Plaintiff indicated were related to anxiety. (*Id.*). Based on his assessment, Dr. Garcher found Plaintiff would be capable of light exertional work for two hours daily. (R. 764). Dr. Putnam reviewed Dr. Garcher's capacity evaluation and indicated her agreement with "the restrictions and recommendations made within the report." (R. 759).

[6]   Dr. Rosenberg examined Plaintiff on August 27, 2019. (R. 741). He found Plaintiff to be "in no acute distress but frail." (R. 743). She also appeared to be "very anxious." (*Id.*). Her gait was normal, stance normal, joints stable, but she had some "pain with range of motion of the right knee" and pain in the left knee upon squatting. (*Id.*). Dr. Rosenberg found Plaintiff had full strength in her upper extremities and "4+/5 strength in the lower extremities." (R. 744). Dr. Rosenberg also noted "hand tremors . . . at rest" in both hands, but further found that Plaintiff had full grip strength and intact hand and finger dexterity. (*Id.*). In the accompanying check-box form for ability to do work-related activities, Dr. Rosenberg opined that, at most, Plaintiff could only carry items over ten pounds occasionally. (R. 745). His opinion in that regard was based

addressed consistency, but did not address supportability despite Dr. Garcher's thorough comments explaining why he limited Plaintiff as much as he did.  For example, Dr. Garcher limited Plaintiff to only occasional walking and explained that there were "Noted changes in gait of speed and sequencing as documented in the gait section."  (R. 771).  In the "gait section," Dr. Garcher explained that he measured Plaintiff's ambulation at 1.1mph and observed "forward flexed posture, decreased knee flexion/extension, and flat foot gait."  (R. 768).  While the ALJ need not have addressed this and every other supporting explanation, he should have indicated his consideration of the supportability factor.

For Dr. Rosenberg's opinion, the ALJ appeared to address consistency when he explained: that Dr. Rosenberg's lift and carry restrictions were nonsensical where Dr. Rosenberg found no limitations in upper extremity strength, and that Dr. Rosenberg's walking limitations were undermined by the lack of indicia of difficulty walking upon exam.  (R. 25).  The ALJ did not, however, address supportability.  Dr. Rosenberg provided explanations for some of the limitations he opined, such as citing Plaintiff's hand tremors to justify the reaching/handling/fingering limitations.  (R. 747).  Though the brevity of Dr. Rosenberg's explanations might have confirmed the ALJ's unpersuasive finding, the ALJ was still obliged to address supportability under the new regulations.  Because the ALJ's assessment of this and

---

on her frailty. (*Id.*).  He opined that Plaintiff could only stand for thirty minutes at a time and walk for forty-five minutes at a time for a total of three hours' standing and four hours' walking daily. (R. 746).  He justified his standing and walking opinions by very brief reference to Plaintiff's "Knees" and "Frail[ty]." (*Id.*).  Dr. Rosenberg also opined Plaintiff would be somewhat limited in reaching, handling, and fingering due to her hand tremors.  (R. 747). Plaintiff's frailty and knees also led the ALJ to opine limitations on Plaintiff's climbing, kneeling, crouching, or crawling. (R. 748).  He further opined environmental limitations and indicated that Plaintiff could not sort/handle paper/files because of her hand tremors. (R. 750).

other opinion evidence in the record fell short of what the new regulations require, the Court will order the matter remanded.[7]

V.     **Conclusion**

For the foregoing reasons, this matter is remanded to the Commissioner for proceedings consistent with this Order, *i.e.*, further consideration of the medical opinion evidence and an articulation of that consideration that is consistent with the new regulations.

                                                                                                      s/ Alan N. Bloch
                                                                                                     United States District Judge

ecf:     Counsel of Record

---

[7] In addition to the medical opinion evidence the Court addressed herein, Plaintiff also challenged the ALJ's assessment of Dr. Daniel Marston's opinion and the State agency consultants' findings. For instance, Plaintiff argued it was error for the ALJ to consider the nature of the treating relationship between her and Dr. Marston—one encounter—when the ALJ did not address that same factor in his consideration of other medical opinions. This argument is without merit because relationship is one of the factors that ALJs *may* consider toward persuasiveness, but they are not required to address it. 20 C.F.R. § 404.1520c(b)(2). For the State agency consultants' opinions, the ALJ abided by the five-factor evaluation and addressed supportability and consistency. (R. 25). Further, the ALJ did not err in noting that these consultants were familiar with standards under the Act, contrary to Plaintiff's contention that this was error. 20 C.F.R. § 404.1520c(c)(5) ("Other factors").